# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAUL I. BURMAN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 04-1276 (RBW) |
| PHOENIX WORLDWIDE INDUSTRIES, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The plaintiffs, Paul I. Burman, Robert C. Warriner, Sylvia J. Rolinski, and the Ingersoll & Bloch, Chartered, Employees Profit Sharing Plan and Trust, bring this action to recover compensatory damages for injuries caused by alleged "statutory securities fraud, common law fraud and misrepresentation, negligent representation, breach of fiduciary duty and negligence" on the part of the defendants, Phoenix Worldwide Industries, Inc. ("Phoenix"), Dr. J. Al Esquivel Shuler ("Shuler"), and Rachlin, Cohen & Holtz, LLP ("Rachlin"). Second Amended Complaint ("Compl.") at 1-2. Currently before this Court is defendant Rachlin's Motion to Dismiss for lack of personal jurisdiction ("Def.'s Mot.") and the plaintiffs' opposition thereto.[1] For the reasons set forth below, this Court will grant the defendant's motion to dismiss.

---

[1] The following papers have been submitted in connection with this motion: (1) defendant Rachlin's Memorandum in Support of Renewed Motion to Dismiss ("Def.'s Mem."); (2) the plaintiffs' Opposition to Defendant Rachlin, Cohen & Holtz's Motion to Dismiss ("Pls.' Opp'n"); and (3) defendant Rachlin's Reply Memorandum in Support of its Motion to Dismiss ("Def.'s Reply").

I. **Background**

This Court has previously set forth an exhaustive discussion of the facts of this case.[2] Burman v. Phoenix Worldwide Indus., 384 F. Supp. 2d 316, 321-24 (D.D.C. 2005). Accordingly, there is no need to provide an extensive discussion of the facts again. It is helpful, however, to review Rachlin's involvement in the events that gave rise to the dispute in this case.

Rachlin is an accounting firm based in Florida with offices located only in that state. Def.'s Mem. at 2. Rachlin has provided accounting services to Phoenix for over ten years. Def.'s Reply, Ex. B (Certification of Harvey Miller). During the course of soliciting purchasers of its common stock in the District of Columbia, Phoenix presented potential investors with audited financial statements that had been prepared by Rachlin. Pls.' Opp'n at 2. The plaintiffs allege that in connection with their purchase of Phoenix common stock, they relied upon the audited financial statements prepared by Rachlin. Id. The 2001-2002 financial statement allegedly contained a number of notes, which the plaintiffs contend were misrepresentations that induced them into purchasing Phoenix common stock. Specifically, two of these notes, Note 10 and Note 13, indicated that Phoenix had been in arrears in its payment of payroll taxes but that "the payroll taxes had been paid in August 2002" and that "[n]o penalties or interest ha[d] been imposed." Compl. ¶ 88; Pls.' Opp'n, Ex. 1 (Affidavit of Jay Zawatsky ¶ 9). However, in April of 2004, the IRS placed a lien on Phoenix's property in the amount of $233,677.95, the amount of Phoenix's payroll tax liabilities plus penalties and interest. Compl., Ex. 3. The plaintiffs

---

[2] The plaintiffs commenced this action on July 29, 2004. On September 7, 2004, Rachlin filed a Motion to Dismiss the complaint pursuant to Rule 12(b)(2). The Court granted the plaintiffs leave to file a First Amended Complaint. Rachlin then filed a Suggestion of Ripeness Concerning Decision on Rachlin's Motion to Dismiss of Alternatively a Renewed Motion to Dismiss. That motion was denied, and the parties were granted leave to conduct jurisdictional discovery. On October 3, 2005, the plaintiffs filed a Second Amended Complaint. Rachlin responded with its Motion to Dismiss for lack of personal jurisdiction that is the subject of this opinion.

allege that Rachlin knew or should have known of the unpaid payroll taxes and did not "adequately report such information in the audited financial statements." Compl. ¶ 157. Therefore, according to the plaintiffs, Rachlin "breached its duty to [them] by falling below the standard of care applicable to accountants in the same or similar situation." Id. The plaintiffs further assert that they "would not have invested in Phoenix securities had [Rachlin]'s audit reports disclosed the existence of unpaid employment taxes." Id. ¶ 158. Thus, the plaintiffs contend that Rachlin's alleged negligence caused them to sustain damages in the amount of $1,116,500, which was the amount they invested in Phoenix common stock plus interest. Id. ¶ 159. Rachlin now responds with its Motion to Dismiss. Apart from the contacts with the District of Columbia alleged in this case, Rachlin's business contacts with this jurisdiction during the time period relevant to the claim lodged against it were limited to seven client relationships consisting of three business valuations and four tax matters. Def.'s Mem. at 9-10. And defendant Phoenix, which is the principal target of the plaintiffs' lawsuit and the entity for whom Rachlin provided the services that form the basis for the claim filed against Rachlin, is a manufacturer with its principal place of business also in Florida. Compl. ¶ 5.

## II. Standard of Review

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the "[p]laintiff bears the burden of establishing personal jurisdiction over each individual defendant." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003). "In the absence of an evidentiary hearing, . . . [the plaintiff] can satisfy [its] burden with a prima facie showing." See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005). In order to meet [this] burden, [the] plaintiff must allege specific facts on which personal jurisdiction can be based; . . .

[the plaintiff] cannot rely on conclusory allegations." Atlantigas Corp., 290 F. Supp. at 42. Furthermore, the plaintiff "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." Id.

### III.    Analysis

In diversity cases, such as the one currently before this Court, a federal district court must look to the jurisdictional law of the forum where it presides to determine whether it has personal jurisdiction over a non-resident defendant. Fed. R. Civ. P. 4(e). Under District of Columbia law, personal jurisdiction can be satisfied either by demonstrating that the court has general jurisdiction pursuant to D.C. Code § 13-422 (2001) or that the court has personal jurisdiction pursuant to the District of Columbia long-arm statute, D.C. Code § 13-423 (2001). The plaintiffs bear the "burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." Crane v. New York Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984)). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff[s]." Id.

Rachlin is legally organized as a Limited Liability Partnership in the State of Florida, has its principal place of business in Florida, and maintains no offices outside of that state. Def.'s Mem. at 2. It is clear, then, and the plaintiffs do not contend otherwise, that the Court does not have general jurisdiction over Rachlin as it is not a "person domiciled in, organized under the laws of, or maintaining . . . its principal place of business in, the District of Columbia . . . ." See D.C. Code § 13-422. Thus, the question for this Court to resolve is whether the Court can exercise personal jurisdiction over Rachlin pursuant to the District of Columbia's long-arm

statute. The plaintiffs contend that they have made a <u>prima facie</u> showing that this Court can exercise personal jurisdiction over Rachlin pursuant to D.C. Code § 13-423(a)(1), (a)(3) and (a)(4). Pls.' Opp'n at 5, 13, 15. These provisions state:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or through an agent, as to a claim for relief arising from the person's:
>
>> (1) transacting any business in the District of Columbia;
>
> \*   \*   \*
>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>
> \*   \*   \*
>
> (b)   When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423. The court will examine the plaintiffs' contentions with respect to each provision in turn.

**(A)   D.C. Code § 13-423(a)(1)**

The plaintiffs first contend that the Court may exert personal jurisdiction over Rachlin because it "transacted business in the District of Columbia and, out of that business, some of the claims in this case arise." Pls.' Opp'n at 11. The phrase "transacting any business" in section 13-423(a)(1) "embraces those contractual activities of a nonresident which cause a consequence here." <u>Mouzavires v. Baxter</u>, 434 A.2d 988, 993 (D.C. Cir. 1981). "[T]he sweep of the

5

'transacting any business' provision . . . covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause." Id. at 992 (citing Margoles v. Johns, 483 F.2d 1212, 1218 (D.C. Cir. 1973)). Therefore, to establish that a court has personal jurisdiction under section 13-423(a)(1), a plaintiff must show not only that the defendant transacted business in the District of Columbia and that the claim arose from the business transacted in the District of Columbia, but also "that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" Dooley v. United Technologies Corp., 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945)). The Court must "examine 'prior negotiations and contemplated further consequences, along with the terms of the contract and the parties actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum.'" Cellutech v. Centennial Cellular Corp., 871 F. Supp. 46, 49 (D.D.C. 1994) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 479 (1985)). "[A] nonresident defendant need not have been physically present in the District [of Columbia]" in order for a court to exercise personal jurisdiction under D.C. Code § 13-423(a)(1). Mouzavires, 434 A.2d at 992. However, "[a] defendant must 'purposefully avail' himself of the privilege of conducting business in the forum state." Cellutech, 871 F. Supp. at 49 (citing Burger King v. Rudzewicz, 471 U.S. 462, 479 (1985) (citations omitted)). This requirement "ensures that the defendant will not be haled into court in a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or third person' . . . ." Id. (citations omitted).

The plaintiffs assert that Rachlin "knowingly and voluntarily transact[ed] Phoenix business in the District of Columbia on multiple occasions over several years." Pls.' Opp'n at 10. To support this assertion they point to: (1) Rachlin's allegedly "supplying Phoenix with its accounting services in the District of Columbia through Phoenix's director Jay Zawatsky;" (2) "knowingly providing financial instruments to Phoenix which were reviewed and relied upon by Phoenix investors in the District of Columbia;" and (3) "faxing and telephoning a director of Phoenix in the District of Columbia in furtherance of its supplying accounting services to Phoenix."[3] Id. at 12. The plaintiffs contend that Rachlin's contact with the District of Columbia was the direct result of Rachlin's contractual obligations to its client, Phoenix, and that the contacts "generated revenue for Rachlin from Phoenix." Id. at 11. These activities, the plaintiffs opine, show that Rachlin had purposefully availed itself of the privileges of conducting business in the District of Columbia so that it might expect to be haled into court here, and therefore equate to "transacting any business" under D.C. Code § 13-423(a)(1). Id. at 11. The Court does not agree.[4]

---

[3] The plaintiffs also assert that Rachlin is subject to personal jurisdiction in this Court on the basis of its "performing at least part of its contract with Phoenix with its director Jay Zawatsky in the District of Columbia." Pls.' Opp'n at 11-12. The Court cannot discern how this allegation differs from "supplying Phoenix with its accounting services in the District of Columbia through Phoenix's director Jay Zawatsky." Id. at 12. Given the highly similar, if not identical, nature of the two allegations, the Court will treat them as one and the same.

[4] Additionally, the plaintiffs cite Asahi Metal Indus. v. Superior Ct. of Cal., 480 U.S. 102, 112 (1987) in contending that Rachlin placed its accounting services into the stream of commerce, which, combined with the Rachlin's alleged provision of "regular advice to its customers," constituted minimum contacts sufficient for this Court to exercise personal jurisdiction over Rachlin in the District of Columbia. Pls.' Opp'n at 12. First, it should be noted that the stream of commerce theory advanced in Asahi is the product of a mere plurality of the Supreme Court, and therefore it is unclear whether it provides a valid basis for establishing minimum contacts. See Irving v. Owens-Corning Fiberglas Corp., 864 F.2d 383, 385-86 (5th Cir. 1989). Second, the plaintiffs fail to provide, and the Court is unable to find, any case authority in this Circuit that supports the notion that the stream of commerce theory applies to services rendered, as a defendant's liability for faulty manufactured products was the sole focus of the Supreme Court's discussion in Asahi. See 480 U.S. at 112. Third, assuming for the sake of argument, that services rendered can be placed in the stream of commerce under Asahi, "[t]he placement of a product into the stream of
(continued...)

The plaintiffs rely on two cases in support of their contention that this Court may exercise personal jurisdiction over the defendant. In <u>Dooley v. United Technologies Corp.</u>, the Court found it proper to exercise personal jurisdiction over a foreign corporate defendant involved in a bribery scheme to provide Black Hawk helicopters to Saudi Arabia without United States government approval. See 786 F. Supp. at 69. The Court based jurisdiction on a wide range of factors, including the fact that the corporate defendants "own[ed] and maintain[ed] business and residential property in Washington, D.C.," and that "[t]hrough their offices in the District [of Columbia], it is alleged that representatives of [the defendant] conducted business directly relating" to the bribery conspiracy. Id. at 72. Moreover, the Court also found that the defendants "ha[d] made countless phone calls and mailings into the District [of Columbia] which directly relate[d] to the Black Hawk Saudi sale," and noted that "telephone calls and mailings to Washington, D.C. constitute 'transacting business' under section 13-423(a)(1). Id. (citing <u>Margoles</u>, 483 F.2d at 1218). And in <u>Schwartz v. CDI Japan, LTD.</u>, the Court found it could properly exercise personal jurisdiction over a Japanese citizen who had never "set foot" in the District of Columbia. 938 F. Supp 1, 5 (D.C.C. 1996). There, the defendant had assumed a contract to develop and sell computer programs in Japan that were produced in the District of Columbia by the Smithsonian Institution. Id. at 3. The defendant argued that his assumption of

---

[4](...continued)
commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Id. The defendant must show "additional conduct" that "indicates an intent or purpose to serve the market in the forum State." Id. While it is true that "providing regular advice to customers in the forum State can indicate such conduct," id., the Court finds highly dubious the plaintiffs' proposition that Rachlin's occasional telephone conversations with Zawatsky, instigated by Zawatsky and in response to his inquiries regarding Phoenix financial matters, constitutes "providing regular advice to customers" to the extent that it "indicates an intent or purpose to serve the market in the forum State." Id. For these reasons, the Court finds the stream of commerce doctrine inapplicable in this case.

the Smithsonian contract was an isolated contact and that he had no role in developing, soliciting, or negotiating the contract. Id. at 5. The Court held, however, that "the fact that [the defendant] negotiated the assignment of the Smithsonian contract and contemplated future consequences in addition to the parties' course of dealing constitutes transacting business in this forum." Id. at 6.

Dooley and Schwartz are not analogous to the facts in this case. In those cases, the defendant was a primary party in the business agreement that gave rise to the dispute. In Dooley, the defendant's telephone calls and mailings were directly related to a sale that the defendant was trying to make in the District of Columbia. See 786 F. Supp. at 72. In Schwartz, the defendant had agreed contractually to engage in a business transaction that took place, in large part, in the District of Columbia. See 938 F. Supp. at 4. In this case, unlike the situation in Schwartz, there is no contractual relationship between Rachlin and the plaintiffs. Furthermore, in contrast to Dooley, Rachlin's contacts with the District of Columbia are not focused on soliciting business or performing a business transaction. In an attempt to bring this case more in line with the facts of Dooley and Schwartz, the plaintiffs seem to assert that Zawatsky, as a Director of Phoenix, should be considered a member of the company, Pl.'s Opp'n at 11-12, and thereby attempt to create a more direct contractual relationship between Rachlin and the District of Columbia. This assertion is misguided. As a Director, Zawatsky was simply a large shareholder and not an employee of Phoenix, as "[i]t is settled that a corporation is regarded as a separate legal entity which is distinct from its shareholders." Chase v. Gilbert, 499 A.2d 1203, 1210 (D.C. Cir. 1985). To accept the plaintiffs' position would amount to a buy-in on the absurd possibility that an accounting firm that produces an annual financial report for a company could be subject to personal jurisdiction in any federal judicial district where a shareholder received the report. Such

an expansive interpretation of when a court can exercise personal jurisdiction would certainly "offend traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316 (internal quotation marks and citations omitted).

The Court has found guidance in two cases from this Circuit in which the defendant was, like Rachlin, a third party to the business agreement that gave rise to the dispute before the courts.  In Bank of Cape Verde v. Bronson, a New York based attorney provided a legal opinion to the Bank of Cape Verde by way of the Cape Verde Embassy in Washington, D.C., representing that his client was not insolvent and was an otherwise worthy candidate to receive a loan from the bank.  See 869 F. Supp. 21, 22 (D.D.C. 1994).  The plaintiff "claim[ed] jurisdiction based solely on the forwarding of opinion letters to the District of Columbia and several phone calls made by Bronson to the Cape Verde Embassy."  Id. at 23.  The Court, noting that "any telephone calls or mailings to the District of Columbia occurred solely because the Bank requested that material be sent here," held that the "defendants' contacts with the forum are minimal and not of a quality that manifests a deliberate and voluntary association with the District of Columbia."  Id. at 23.  In COMSAT Corp. v. Finshipyards S.A.M., the defendant acted as a third party "Accounting Authority" in a relationship between COMSAT, a satellite telecommunications company located in Washington, D.C., and the African country of Zaire.  See 900 F. Supp. 515, 519 (D.D.C. 1995).  Under the agreement, the defendant was appointed to act as an intermediary, remitting payments to COMSAT from Zaire for use of satellite telecommunications in return for a commission paid by Zaire.  Id.  When Zaire defaulted on payments the plaintiff sued Finshipyards, asserting that jurisdiction over the defendant was proper because of, among other things, "Finshipyards' alleged awareness that COMSAT was

10

located in the District of Columbia when it accepted appointment as Zaire's Accounting Authority . . . [and] telephone and fax communications between COMSAT and Finshipyards regarding unpaid invoices." Id. at 521. The Court held that "the connection between the economic benefit contracted for and received by Finshipyards and the District of Columbia is too attenuated to provide a basis for jurisdiction here." Id. at 522. Regarding the telephone and fax communications between COMSAT and Finshipyards, the Court found that "the fact that Finshipyards was required to communicate with COMSAT at its offices in the District of Columbia . . . has not been shown to arise out of any desire . . . to do business with COMSAT in Washington, D.C." Id. at 523.

     The Court finds Bronson and COMSAT to be almost directly on point with the situation here. As in those cases, Rachlin was not communicating by fax and telephone with Zawatsky in an attempt to further its own business interests or complete a sale in the District of Columbia. Rather, it did so as the result of directions given by Phoenix's President and CEO in order to fulfill its contractual obligations to Phoenix. Pls.' Reply, Ex. C (Affidavit of Morris Hollander ("Hollander Aff.") ¶ 8). Furthermore, Rachlin's distribution of financial statements to Phoenix investors in the District of Columbia was not aimed at furthering any business dealings in the District of Columbia. While it is true, as asserted by the plaintiff, that Rachlin's contact with the District of Columbia was the direct result of its contractual obligations to Phoenix, nothing has been presented to the Court concerning "prior negotiations and contemplated further consequences" which indicate that Rachlin was conducting business in the District of Columbia. See Cellutech, 871 F. Supp. at 49 (citing Burger King v. Rudzewicz, 471 U.S. 462, 479 (1985)).

Like the defendant in Bronson, Rachlin's telephone conversations with or mailings to the plaintiffs occurred solely because the plaintiffs requested that these communications be directed to the District of Columbia. Pls.' Reply, Ex. C (Hollander Aff. ¶ 12). And, as in COMSAT, communications with the plaintiffs in their offices in the District of Columbia "has not been shown to arise out of any desire . . . to do business with [the plaintiffs] in Washington, D.C." See COMSAT, 900 F. Supp. at 523. Rather, Rachlin's communications with and furnishing of financial statements to Zawatsky in the District of Columbia reflects only the "unilateral activity of another party" in requesting that they be sent here. In sum, Rachlin's contacts with the District of Columbia arise out of a contractual relationship with Phoenix in Florida. And Rachlin had no control over where Phoenix would instruct it to send Phoenix's financial reports. Similarly, Rachlin communicated with the plaintiffs in the District of Columbia only upon request and instruction from Phoenix, and moreover, only in response to unilateral inquiries from Zawatsky. Accordingly, Rachlin has clearly not "purposefully avail[ed] [itself] of the privilege of conducting business within the [District of Columbia]." Cellutech, 871 F. Supp. at 49 (citing Burger King, 471 U.S. at 475 (citations omitted)). Therefore "the connection between the economic benefit contracted for and received by [Rachlin] and the District of Columbia is too attenuated to provide a basis for jurisdiction here." COMSAT, 900 F. Supp. at 522. On this record, the plaintiff has failed to make a prima facie showing that the Court may exercise personal jurisdiction over the defendant pursuant to D.C. Code § 13-423(a)(1).

**(B)     D.C. Code § 13-423(a)(3)**

As the plaintiffs themselves acknowledge, section 13-423(a)(3) is "'a precise and intentionally restricted tort section which stops short of the outer limits of due process,' and

requires that both act and injury occur in the District of Columbia." Pls.' Opp'n at 4 (quoting Helmer v. Doletskaya, 393 F.3d 201, 208 (D.C. Cir. 2004). Nonetheless, the plaintiffs contend that jurisdiction exists under section 13-423(a)(3) because "Rachlin[, by] plac[ing] the materials in the 'stream of commerce' with the understanding that the materials would affect investors in the District of Columbia, and augment[ing] that action by telephone calls and fax communication," Pls.' Opp'n at 14, "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). The plaintiffs' position must be rejected.

As discussed in footnote 2, supra, given the facts of this case, it is inappropriate to utilize the stream of commerce doctrine to establish that Rachlin had minimum contacts with the District of Columbia. Furthermore, under Asahi, an analysis of whether a product has been placed in the stream of commerce is used to help determine if a defendant has minimum contacts with the forum State. See 480 U.S. at 112 (emphasis added). Minimum contacts, by their very definition, represent the smallest presence a defendant may have in a forum State and still be subject to personal jurisdiction. See International Shoe, 326 U.S. at 316-17. Therefore, personal jurisdiction over a defendant based on minimum contacts rests at the outer limit of due process. D.C. Code § 13-423(a)(3), however, "'stops short of the outer limits of due process.'" Helmer, 393 F.3d at 208 (quoting Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217, 221 (D.C. Cir. 1986)). Thus, examining whether a product has been placed in the stream of commerce may be appropriate when determining whether a court may exercise personal jurisdiction over a defendant pursuant to section 13-423(a)(1), which is coextensive with the Due Process Clause. See Mouzavires, 434 A.2d at 992. However, it is irrelevant in determining whether a defendant

13

is subject to personal jurisdiction under section 13-423(a)(3), which requires that "both act and injury occur in the District of Columbia." D.C. Code § 13-423(a)(3). In this case, it is uncontested that the preparation of the financial reports that caused the alleged injury occurred in Florida. Pls.' Opp'n at 13; Def.'s Mem. at 3. Furthermore, the plaintiffs "do not contend that [Rachlin's] telephone calls themselves constitute an 'act or omission' in the District of Columbia." Pls.' Opp'n at 14. Therefore, the plaintiffs have not made a prima facie showing that this Court may exercise personal jurisdiction over Rachlin pursuant to D.C. Code § 13-423(a)(3).

**(C)     D.C. Code § 13-423(a)(4)**

The plaintiffs contend that, in the event this Court finds that the alleged "act or omission" did not occur in the District of Columbia, "personal jurisdiction still attaches because Rachlin 'regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered in the District of Columbia.'" Pls.' Opp'n at 15 (quoting D.C. Code § 13-423(a)(4)). "The minimum contacts that are required for regularly doing business or engaging in a persistent course of conduct should 'at least be continuing in character.'" McFarlane v. Esquire Magazine, No. 92-0711, 1994 WL 510088, at *4 (D.D.C. June 8, 1994) (citing Sec. Bank v. Tauber, 347 F. Supp 511, 515 (D.D.C. 1972)). And furthermore, "the continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." International Shoe, 326 U.S. at 318 (citations omitted). The "criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative," rather, the Court must examine "the quality and nature of the activity." Id. at 319. Moreover, "substantial

revenue," in the context of section (a)(4), "means 'enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be hauled into court there.'" McFarlane, 1994 WL 510088 at *5 (citing Delahanty v. Hinckley, 686 F. Supp. 920, 925 (D.D.C. 1986)). "[T]he test for substantial revenue 'looks both at the absolute amount and at the percentage of total sales, and determines what is substantial on the facts of each case.'" Fogle v. Ramsey Winch Co., 774 F. Supp. 19, 23 (D.D.C. 1991) (quoting Founding Church of Scientology v. Verlag, 536 F.2d 429, 433 (D.C. Cir. 1976)).

The plaintiffs contend that jurisdiction over Rachlin is proper under D.C. Code § 13-423(a)(4) for the following three reasons: (1) Rachlin partners and employees traveling to the District of Columbia "to attend continuing education programs, seminars, and conferences;" (2) Rachlin placing approximately 1,326 outgoing calls to the District of Columbia during the period when Rachlin provided accounting services to the seven clients who resided in the District of Columbia; and (3) the providing of those accounting services to the seven District of Columbia residents. Pls.' Opp'n at 15. The Court concludes that these activities are insufficient to confer personal jurisdiction to this Court over Rachlin pursuant to D.C. Code 13-423(a)(4).

Regarding the plaintiffs' contention that Rachlin is subject to personal jurisdiction here by virtue of its employees attending continuing education programs, seminars, and conferences in the District of Columbia, they have provided no evidence that these trips involved doing or soliciting business. Furthermore, there is no evidence that these excursions to the District of Columbia are regular in nature or otherwise exemplify a persistent course of conduct. In an analogous situation, courts in this jurisdiction have explicitly rejected the notion that a non-resident defendant can be subjected to jurisdiction based upon its membership in a local

organization.  Thus, in Am. Ass'n of Cruise Passengers v. Cunard Line Ltd., a former member of this Court found that personal jurisdiction could not be asserted over an out-of-state defendant based on his "sporadic attendance at trade association meetings held in the District of Columbia. . . ."  691 F. Supp. 379, 381 (D.D.C. 1987).  The Court finds the extremely limited contacts involved in attending continuing education programs, conferences and seminars analogous to "attendance at trade association meetings."  Therefore, this Court finds that it cannot exercise personal jurisdiction over the defendant under section 13-423(a)(4) on the basis of its employees traveling to the District of Columbia to attend continuing education programs, conferences, and seminars.

The Court turns next to the plaintiffs assertion that Rachlin's 1,326 telephone calls to the District of Columbia provide a basis for this Court exercising personal jurisdiction.  In Tavoulareas v. Comnas, the plaintiffs attempted to base personal jurisdiction on frequent telephone calls made by the defendant to the District of Columbia.  720 F.2d 192, 194 (D.C. Cir. 1983).  The District of Columbia Circuit held that, while the telephone calls to the District of Columbia may have been a persistent course of conduct, they did not constitute a "persistent course of conduct in the District [of Columbia] as required by section 13-423(a)(4).  Id. (emphasis in original).  The Court finds Tavoulareas controlling and therefore concludes that Rachlin's approximately 1,326 telephone calls to the District of Columbia does not constitute a persistent course of conduct in the District of Columbia for section 13-423(a)(4) purposes.  In the absence of any evidence that the telephone calls were related to doing or soliciting business in the District of Columbia, the Court must conclude that Rachlin's telephone calls to the District of Columbia do not provide a proper basis for this Court to exercise personal jurisdiction.

Finally, the Court must examine whether Rachlin's performance of accounting services, from January of 2001 through December of 2005, to seven clients who resided in the District of Columbia is sufficient for this Court to exercise personal jurisdiction under section 13-423(a)(4). The defendant acknowledges that it provided accounting services to seven District of Columbia residents over the relevant time period, but contends that for two of the clients, the services provided consisted solely of a business valuation of Florida property that took place entirely in Florida. Def.'s Mem. at 10. Therefore, the defendant asserts, the business valuations, performed entirely within Florida, did not constitute rendering services in the District of Columbia.[5] Id. The defendant further argues that the services provided to the remaining four clients do not rise to a level sufficient to subject Rachlin to personal jurisdiction in the District of Columbia in relation to a cause of action that is completely distinct from its activities here. Id. at 11. The Court agrees.

There is a notable lack of analogous case authority on this issue. See Parsons v. Mains, 580 A.2d 1329, 1329 (D.C. 1990) ("This Court has had almost no occasion to discuss § 13-423(a)(4) . . . ."). "When District of Columbia law is silent, it has been the practice of the federal courts in this Circuit to turn to the law of Maryland for historical and geographical reasons." Gray v. American Express Co., 743 F.2d 10, 17 (D.C. Cir. 1984). In cases involving a substantially identical provision of the Maryland long-arm statute[6], the Maryland Court of

---

[5] A third business valuation was performed for the Department of Justice. Def.'s Mem. at 10. Neither party provided any information regarding the name or location of the business. Id. In the absence of any evidence suggesting that the business's location was the District of Columbia, the Court will treat this business valuation the same as the two Florida business valuations for the purpose of determining whether they are contacts that rise to the level necessary to satisfy D.C. Code § 13-423(a)(4).

[6] Md. Code § 6-103 reads, in relevant part:

(continued...)

17

Appeals has held that "[w]hen a claim does not arise out of or does not relate to the defendant's contacts with the forum state, those contacts must be fairly extensive before personal jurisdiction will be imposed . . . ." Poole & Kent Co. v. Equilease Assoc. I, 523 A.2d 1018, 1024 (Md. Ct. Spec. App. 1987) (citing Camelback Ski Corp. v. Behning, 513 A.2d 874, 878 (Md. 1986). In Equilease, it was held that the court could not exercise personal jurisdiction over the defendant, a lessor of computer equipment, despite the existence of four lease agreements between the defendant and Maryland residents that were unrelated to the plaintiffs' cause of action. 523 A.2d at 1024. The court found that the lease agreements, which represented only a small fraction of the defendant's total annual revenue, "[did] not represent a sufficiently extensive relationship between [the defendant] and Maryland . . . ." Id. at 1025. Likewise, in Gimer v. Jervey, a federal district court refused, pursuant to the Maryland long-arm statute to exercise personal jurisdiction over a defendant who had, well before the litigation began, been employed in Maryland, had volunteered previously as a counselor at a camp in Maryland for a short period of time, traveled through Maryland in his automobile on a number of occasions, and had performed odd jobs for compensation within Maryland. 751 F. Supp 570, 573 (W.D.Va. 1990).[7]

The nearly $30,000 in revenue that Rachlin has received from its contacts in the District of Columbia amounts to approximately 0.15% of Rachlin's total annual income of $20 to $30

---

[6](...continued)
(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State of derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

[7] This case had been transferred to the Western District of Virginia because of improper venue, however, the Virginia District court applied Maryland law. See Gimer, 751 F. Supp. at 572.

million over the period in question. Def.'s Mem., Ex. A. As in Equilease, this amount does not "represent a sufficiently extensive relationship" between Rachlin and the District of Columbia. See 523 A.2d at 1025. Furthermore, $30,000, examined in either absolute or percentage terms, is not sufficient to "indicate a commercial impact in the forum, such that a defendant fairly could have expected to be hauled into court [here]." McFarlane, 1994 WL 510088, at *5.

Moreover, the quality and nature of these contacts represent a negligible relationship with this forum. Each of the services provided to the seven clients arose out of Rachlin's presence in Florida, rather than as the result of any regular business relationships or persistent course of conduct in the District of Columbia. For one of the District of Columbia residents with whom Rachlin had a relationship, the services performed consisted of an audit of Florida sales tax payments for a firm that had relocated from Florida to the District of Columbia, Def.'s Mem. at 10, and is therefore completely related to Rachlin's contacts in Florida. Similarly, the business valuations performed by Rachlin were conducted in Florida, on Florida properties. As such, it was Rachlin's presence in Florida that generated the revenue received in return for the business valuations, rather than due to Rachlin's presence in the District of Columbia. For the final two of the District of Columbia residents with whom Rachlin had a relationship, the services performed consisted of merely preparing personal tax returns and establishing a non-operating corporation as a tax shelter. Def.'s Mem. at 9-10. These relationships existed only because the clients are the offspring of Rachlin clients who reside in Florida and, furthermore, are directly related to the work being performed for the Florida clients. Id. at 11. Performing services such as these does not equate to activity in the District of Columbia that is "at least continuing in character." McFarlane, 1994 WL 510088, at *4. In essence, these services provided by Rachlin to District of

Columbia residents are the accounting equivalent of the "odd jobs" deemed insufficient to exercise personal jurisdiction over the defendant by the <u>Gimer</u> court. 751 F. Supp. at 573. Thus, the services provided by Rachlin in the District of Columbia cannot be considered "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." <u>International Shoe</u>, 326 U.S. at 318 (citations omitted). Therefore, the Court finds that it cannot properly exercise personal jurisdiction over Rachlin pursuant to D.C. Code § 13-423(a)(4).

## **Conclusion**

For the aforementioned reasons, this Court grants Rachlin's Motion to Dismiss because it cannot properly exercise personal jurisdiction over the defendant pursuant to D.C. Code § 13-422 or D.C. Code § 13-423.

SO ORDERED this 7th day of July, 2006.[8]

REGGIE B. WALTON<br>United States District Judge

---

[8] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.